**WILENTZ, GOLDMAN & SPITZER, P.A.**
KEVIN P. RODDY (SBN 128283)
90 Woodbridge Center Drive
Post Office Box 10
Woodbridge, NJ 07095
Telephone: (732) 636-8000
Facsimile: (732) 726-6686
kroddy@wilentz.com
**Attorneys for Plaintiffs**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

--------------------------------------------------------X

LICGO PARTNERS, LLC, SOVEREIGN
PARTNERS, LLC, and PARADIGM
CAPITAL HOLDINGS, LLC,

    Plaintiffs,

v.

KEITH BERMAN, DECISION
DIAGNOSTICS CORP. and
PHARMATECH SOLUTIONS, INC.,

    Defendants.

--------------------------------------------------------X

Case No. 2:21-cv-02390

**COMPLAINT**

**JURY TRIAL DEMANDED**

        Plaintiffs, LICGO Partners, LLC ("LICGO"), Sovereign Partners, LLC ("Sovereign") and Paradigm Capital Holdings, LLC ("Paradigm") (collectively, "Plaintiffs"), by and through their undersigned attorneys, as and for their Complaint as against Defendants Keith Berman ("Berman"), Decision Diagnostics Corp. ("DECN") and PharmaTech Solutions, Inc. ("PharmaTech") (collectively, "Defendants"), hereby allege and state as follows:

## FACTS COMMON TO ALL COUNTS

## NATURE OF THE CASE

1.      This case involves Defendants' fraudulent and unlawful conduct inducing Plaintiffs to invest, and to purchase securities, in DECN, only to, thereafter, wrongfully deprive Plaintiffs from exercising their rights and realizing gains from their investments.   After procuring substantial investments from Plaintiffs, Defendants abjectly and wrongfully refused to permit Plaintiffs to convert preferred shares of DECN into common stock, as DECN previously agreed and was obligated to do, pursuant to the express written terms of the agreements.  Rather, Berman misappropriated Plaintiffs' investment funds for his own personal use and benefit, causing DECN to become financially distressed.  To remedy this dire situation, Defendants sought to capitalize upon the COVD-19 pandemic by misrepresenting DECN's marketing and distribution of a COVID-19 screening test that never was developed and did not exist.   After Defendants' fraud was uncovered, DECN's common stock was rendered worthless, as was Plaintiffs' investment in DECN.  This suit follows.

## THE PARTIES

A.      **Plaintiff LICGO**

2.      Plaintiff LICGO is a Florida limited liability company with two members.  One member is a resident of New Jersey, and the other member is a resident of Florida. Its principal place of business is located in Boca Raton, Florida.

3.      LICGO is an entity which invested funds to purchase securities in DECN.

2

Complaint on behalf of Plaintiffs LICGO Partners, LLC, Sovereign Partners, LLC Paradigm Capital Holdings, LLC Case No.

#12113994.1

**B.**     **Plaintiff Sovereign**

4.     Plaintiff Sovereign is a Florida limited liability company with two members. One member is a resident of New Jersey, and the other member is a resident of Florida.  Its principal place of business is located in Albuquerque, New Mexico.

5.     Sovereign is an entity which invested funds to purchase securities in DECN.

**C.**     **Plaintiff Paradigm**

6.     Plaintiff Paradigm is a Florida limited liability company.  Paradigm is a single-member managed limited liability company in which its sole member is a resident of Florida. Its principal place of business is located in Boca Raton, Florida.

7.     Paradigm is a business consulting company that provided business consulting services to DECN.

**D.**     **Defendant Berman**

8.     Defendant Berman is a resident of Westlake Village, California.  Berman represents that he has over 35 years' experience in the healthcare field, in general, and has  over 27 years' experience specializing in healthcare software including intranet and internet systems. See https://www.decisiondiagnostics.co/about.html

**E.**     **Defendant DECN**

9.     Defendant DECN is a corporation incorporated in the State of Nevada with a principal place of business located in Westlake Village, California.

10.     As represented to the State of Nevada in its corporate filing, defendant Berman is the President, Treasurer, Secretary and Director of DECN.  Additionally, Berman is identified as the Chief Executive Officer and Chief Financial Officer of DECN.

3

11.     At all relevant times, DECN has held itself out as specializing in prescription and non-prescription diagnostics, and at home medical testing products.     See https://www.decisiondiagnostics.co/about.html

**F.      Defendant PharmaTech**

12.     Defendant PharmaTech is a corporation incorporated in the State of Nevada with a principal place of business located in Westlake Village, California.

13.     PharmaTech is a wholly owned subsidiary of DECN.

14.     As represented to the State of Nevada in its corporate filing, defendant Berman is the President, Treasurer, Secretary and Director of PharmaTech.

15.     At all relevant times, PharmaTech has held itself out as "a leading supplier and manufacturer of affordable home care products for glucose testing and diabetes treatment."  See https://pharmatechsolutions.co/  As set forth on its website, PharmaTech, "manufactures a line of FDA-cleared, cost effective, glucose test strips."  Id.

## JURISDICTION AND VENUE

16.     Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331 (federal question).

17.     Additionally, subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332 (diversity) in that the amount in controversy exceeds $75,000.00 and the Plaintiffs and the Defendants to this matter are citizens of different states.

18.     Venue is proper in this Court under 28 U.S.C. § 1391 because defendant Berman is a resident of California, both defendants DECN and PharmaTech have their principal place

4

of business in California, and a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district.

19.    While subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332, this Court also has supplemental jurisdiction of all state statutory and common law claims asserted herein under 28 U.S.C. § 1367, as they are so related to the federal claims asserted that they form part of the same case under Article III of the United States Constitution.

## DEFENDANTS PEREPETRATED A FRAUD UPON PLAINTIFFS

### A.    Plaintiffs Were Fraudulently Induced To Invest and Purchase Securities in DECN

20.    To induce Plaintiffs to invest in DECN, Berman, made numerous material misrepresentations and/or omissions and failed to disclose facts necessary to make other statements not misleading concerning DECN.   Plaintiffs relied upon these material representations and/or omissions to their detriment in deciding to invest in DECN and purchase securities from DECN.

21.    For example, DECN, by and through Berman, routinely misrepresented and overstated DECN's distribution contracts for its medical device products.

22.    DECN, by and through its wholly owned subsidiary defendant PharmaTech, provides FDA approved blood glucose home testing test strips and blood testing monitors.  See https://www.decisiondiagnostics.co/about.html#bod  DECN "also provides smart phone based electronic medical record (EMR) applications", that DECN touts as being able "to be used by physicians at point of care … to easily and efficiently access and update their patients' histories." Id.

5

Complaint on behalf of Plaintiffs LICGO Partners, LLC, Sovereign Partners, LLC Paradigm Capital Holdings, LLC Case No.

#12113994.1

23.     In connection with the distribution of such medical products, DECN, by and through Berman, misrepresented that DECN possessed contracts and relationships with various big box retailers and pharmaceutical chains, including CVS.  Based upon information only recently learned by Plaintiffs through their own independent investigation, the information provided by Defendants concerning DECN's distribution contracts was false.

24.     Additionally, DECN, by and through Berman, routinely misrepresented to Plaintiffs, both before, during  and after Plaintiffs' investments in DECN, that DECN was in negotiations to be acquired.   That information was material to Plaintiffs; as such a transaction would greatly increase the value of DECN and the shares owned by Plaintiff.  Based upon information only recently learned by Plaintiffs through their own independent investigation, the information provided by Defendants concerning other outside investments in and/or acquisitions of DECN was false.

25.     As a result of Defendants' wrongful conduct, in which the aforementioned information was misrepresented, Plaintiffs agreed to purchase convertible shares of DECN.

### i.     LICGO Subscription Agreement

26.     In or about May 2016, LICGO invested in DECN by and through the "Convertible Preferred Class C Subscription Agreement" (the "LICGO Subscription Agreement").

27.     Pursuant to the LICGO Subscription Agreement, LICGO purchased two thousand two hundred thirty nine (2,239) Series 2011 Convertible Preferred Class C shares of DECN (the "2011 Convertible Shares") at a purchase price of one thousand dollars ($1,000.00)

Complaint on behalf of Plaintiffs LICGO Partners, LLC, Sovereign Partners, LLC Paradigm Capital Holdings, LLC
Case No.

#12113994.1

per share for a total purchase price of two million two hundred thirty nine thousand dollars ($2,239,000.00).

28.     As set forth at Paragraph (g)(i)(A) in an Amendment to the LICGO Subscription Agreement, the 2011 Convertible Shares "shall be convertible, at the option of the holder thereof [i.e., LICGO], at any time after six months and one day from the time such shares of the Series C 2011 Preferred Stock are issued …"

29.     Significantly, pursuant to Paragraph (g)(iii) of the Amendment to the LICGO Subscription Agreement, Defendants expressly represented that DECN would not take any action to "avoid or seek to avoid the observance of or performance of" LICGO's right to convert the 2011 Convertible shares.

30.     Additionally, pursuant to Paragraph (g)(iii) to the Amendment to the LICGO Subscription Agreement, Defendants expressly represented that DECN would "at all times in good faith assist in the carrying out of" LICGO's right to convert the 2011 Convertible shares.

       **ii.**      **Sovereign Subscription Agreements**

       **a.**      **The First Sovereign Subscription Agreement**

31.     In or about August 2017, Sovereign invested in DECN by and through the "Convertible Preferred Class D Subscription Agreement" (the "First Sovereign Subscription Agreement").

32.     Pursuant to the First Sovereign Subscription Agreement, Sovereign purchased twenty (20) Series 2012 Convertible Preferred Class D shares of DECN (the "First 2012 Convertible Shares") at a purchase price of twelve thousand five hundred dollars ($12,500.00) per share for a total purchase price of two hundred fifty thousand dollars ($250,000.00).

7

33.     Pursuant to the First Sovereign Subscription Agreement, sixty thousand (60,000) bonus common stock purchase warrants were attached to each of the First 2012 Convertible Shares.

34.     As set forth at Paragraph (g)(i)(A) in an Amendment to the First Sovereign Subscription Agreement, the First 2012 Convertible Shares "shall be convertible, at the option of the holder thereof [i.e., Sovereign], at any time after thirty-six months and one day from the time such shares of Series D Preferred Stock are issued …"

35.     Significantly, pursuant to Paragraph (g)(iii) of the Amendment to the First Sovereign Subscription Agreement, Defendants expressly represented that DECN would not take any action to "avoid or seek to avoid the observance of or performance of" Sovereign's right to convert the First 2012 Convertible shares.

36.     Additionally, pursuant to Paragraph (g)(iii) of the Amendment to the First Sovereign Subscription Agreement, Defendants expressly represented that DECN would "at all times in good faith assist in the carrying out of" Sovereign right to convert the First 2012 Convertible shares.

**b.     The Second Sovereign Subscription Agreement**

37.     Thereafter, in or about October 2017, Sovereign again invested in DECN by and through another "Convertible Preferred Class D Subscription Agreement" (the "Second Sovereign Subscription Agreement").

38.     Pursuant to the Second Sovereign Subscription Agreement, as amended by a subsequent Amendment to Subscription Agreement, Sovereign purchased fourteen (14) Series 2012 Convertible Preferred Class D shares of DECN (the "Second 2012 Convertible Shares")

8

at a purchase price of twelve thousand five hundred dollars ($12,500.00) per share for a total purchase price of one hundred seventy five thousand dollars ($175,000.00).  Additionally, as a bonus for consideration agreed upon by and between Sovereign and DECN, Sovereign was granted six (6) additional Second 2012 Convertible Shares, which were accorded the same rights to convert to Sovereign, and imposed the same obligations to convert upon Defendants.

39.     Pursuant to the Second Sovereign Subscription Agreement, sixty thousand (60,000) bonus common stock purchase warrants were attached to each of the Second 2012 Convertible Shares.

40.     As set forth at Paragraph (g)(i)(A) in an Amendment to the Second Sovereign Subscription Agreement, the Second 2012 Convertible Shares "shall be convertible, at the option of the holder thereof [i.e., Sovereign], at any time after thirty-six months and one day from the time such shares of Series D Preferred Stock are issued …"

41.     Significantly, pursuant to Paragraph (g)(iii) of the Amendment to the Second Sovereign Subscription Agreement, Defendants expressly represented that DECN would not take any action to "avoid or seek to avoid the observance of or performance of" Sovereign's right to convert the Second 2012 Convertible shares.

42.     Additionally, pursuant to Paragraph (g)(iii) of the Amendment to the Second Sovereign Subscription Agreement, Defendants expressly represented that DECN would "at all times in good faith assist in the carrying out of" Sovereign right to convert the Second 2012 Convertible shares.

### iii.     Paradigm's Independent Contractor Agreement

9

43.    In or about July 2017, Paradigm entered into an "Independent Contractor Agreement" with DECN (the "Paradigm Independent Contractor Agreement").

44.    Pursuant to the Paradigm Independent Contractor Agreement, DECN engaged Paradigm to provide its "certain skills and expertise that may be useful to DECN in conducting the Business", which was defined as the "manufacturing and distributing [of] certain medical devices."

45.    Pursuant to the Paradigm Independent Contractor Agreement, Payment to Paradigm was to be by and through the issuance of the following: (a) one hundred and sixty one (161) 2012 Series D Preferred Stock, in which one share was convertible into one hundred twenty thousand (120,000) shares of DECN common stock; and one hundred and thirty (130) Series B Preferred Stock, in which one share was convertible into fifteen thousand (15,000) shares of DECN common stock.

**B.    Defendants' Fraudulent Efforts To Capitalize on the Covid-19 Pandemic**

46.    In January 2020, Covid-19 was spreading throughout Europe and Asia.  Shortly thereafter, the first cases of Covid-19 were detected in the United States.  By January 31, 2020, the Secretary of Health and Human Services declared Covid-19 a national public health emergency.  By March 11, 2020, the Covid-19 outbreak was officially declared a global pandemic.

47.    Of critical necessity, adequate and affordable Covid-19 testing did not exist at the outset of the pandemic, and governments and businesses throughout the world immediately reacted in an effort to meet this demand.

10

Complaint on behalf of Plaintiffs LICGO Partners, LLC, Sovereign Partners, LLC Paradigm Capital Holdings, LLC Case No.

#12113994.1

48.     Given this calamity, Defendants sought to unscrupulously capitalize on the Covid-19 pandemic by convincing DECN investors and the unsuspecting public that DECN was uniquely positioned to develop and distribute an at-home test that could detect the Covid-19 virus.

49.     At the beginning of 2020, Defendants were in an exceedingly dire financial position.  Berman confirmed that Defendants financial situations were "perilous", and that DECN was forced to let go employees as a result.  See Indictment dated December 15, 2020, ¶ 9, United State of America v. Berman, United States District Court, District of Columbia, Criminal Case No. 1:20-cr-00278, Document No. 1 (the "Indictment").

50.     Notwithstanding Defendants' "perilous" financial position, DECN, by and through Berman, routinely minimized and misrepresented the financial position of DECN, all while Berman was using DECN as his "alter ego" and misappropriating its funds for his own personal benefit.  Indeed, upon information and belief, throughout 2019 and 2020, "Berman misappropriated hundreds of thousands of dollars from DECN for his own personal use and benefit."  See Indictment, ¶¶ 7-8.

51.     Upon information and belief, Berman similarly used PharmaTech as his "alter ego" and personal piggy bank.  Upon information and belief, Berman misappropriated and diverted funds from DECN, including those funds invested by Plaintiffs, to PharmaTech.

52.     Defendants sought to remedy their financial condition by artificially manipulating DECN's share price, by "(a) making materially false and misleading public statements related to DECN's purported COVID-19 test; (b) concealing the true facts about DECN's purported COVID-19 test; (c) diverting the proceeds of the scheme for his personal

11

use and benefit; and (d) concealing the scheme …" from interested parties, such as Plaintiffs. See Indictment, ¶ 12.

53.     In particular, DECN, by and through Berman, knowingly misstated and misrepresented the readiness, availability and capabilities of its alleged COVID-19 screening test.  DECN coordinated its misrepresentations with PharmaTech, in which it misrepresented that DECN's alleged COVID-19 screening test would be widely available and accessible by and through PharmaTech.  Among other means of dissemination, Defendants made such misrepresentations through DECN's and PharmaTech's websites, and through official press releases and various other forms of disclosures.  See Indictment ¶¶ 16-32; See also http://investor.decisiondiagnostics.co/press.html;                        See https://pharmatechsolutions.co/genviro.html

54.     For example, on or about March 16, 2020, DECN, by and through Berman issued a press release confirming that DECN was implementing a plan by which it would bring at least 100,000 kits of DECN's alleged COVID-19 screening test to the United States market, and     100,000     kits     to     the     European     market,     by     May     2020.     See https://www.accesswire.com/580769/DECN-Updates-on-Its-Corona-Virus-Testing-Product-GenviroTM-With-200000-Kits-to-Be-Provided-in-USA-EU-Prior-to-the-Summer-12-Month-Forecast-Updated-to-480mm

55.     Upon learning this news, a member of Plaintiffs called Berman to inquire as to the specifics of DECN's plan.  No specifics were provided, rather, Berman simply hung the telephone instead of providing any response.

12

56.     On or about March 20, 2020, DECN, by and through Berman, issued a press release celebrating that its COVID-19 screening test was progressing through FDA approvals, and that DECN secured thirteen million dollars ($13,000,000.00) of financing.   See https://www.accesswire.com/581701/DECN-to-Finance-2Q-2020-Roll-Out-of-its-GenViro-Covid-19-Rapid-Kits-Using-Non-Dilutive-Debt-Financing-Totaling-13-Million-Acquired-in-Near-0-Rate-Environment

57.     Remarkably, despite DECN's alleged procurement of such purported financing, Berman complained to the members of Plaintiffs that DECN did not have sufficient funds by which to proceed with the manufacture and distribution of its COVID-19 screening test.

58.     Thereafter, DECN, by and through Berman, issued a false press release that DECN had entered into a vital distributorship agreement with a company owned by members of Plaintiffs.   See   https://www.bloomberg.com/press-releases/2020-04-23/decn-to-submit-second-eua-application-for-covid-19-15-home-testing-genviro-swift-kit-reports-huge-response-from-for   The content of the press release, which attempted to legitimize DECN's purported COVID-19 screening test, was an outright lie.  No relationship ever existed between DECN and the aforementioned company, either to assist in the sale of COVID-19 screening tests or for any other basis.

59.     This was not the only example of Defendants' flagrant misrepresentation of DECN's distribution of its purported COVID-19 screening test.   DECN promoted that it was forging a distributorship agreement with Major League Baseball ("MLB").  DECN's promotion was a fabrication, as no such agreement was ever realized.  Rather, only a member of Plaintiffs

13

introduced Berman to a contact with a MLB franchise, and nothing further came of this simple introduction.

60.    In fact, Plaintiffs have come to learn, virtually, all, if not all, of the information disseminated by DECN, by and through Berman, concerning DECN's purported COVID-19 screening test was false.  See Indictment, ¶ 35.

61.    Neither DECN, nor Berman, ever developed or created a COVID-19 screening test kit, let alone one that was either ready to pass FDA approvals or be available for distribution.  Id.

62.    As a result of Defendants' fraudulent conduct, the United States of America issued the Indictment, and, on or about December 17, 2020, the Securities and Exchange Commission filed a Complaint against Defendants alleging violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.  See Indictment; see also Securities and Exchange Commission v. Keith Berman and Decision Diagnostics Corp., United States District Court, Southern District of New York, Case No. 1:20-cr-10658, Document No. 1, the "Complaint".

63.    At no time did Plaintiffs or any of its members have any knowledge of Defendants wrongful, fraudulent and unlawful conduct perpetrated by Defendants.

C.    **DECN and Berman's  Unlawful Refusal to Permit Plaintiffs to Exercise their Conversion Rights**

64.    DECN, by and through Berman, wrongfully rejected Plaintiffs right to exercise their conversion rights in the various DECN securities they owned while and at a time when Plaintiffs would have realized tens of millions of dollars in profits upon the conversion and sale of the shares.

65.     At each and every instance that Plaintiffs sought to lawfully exercise their conversion rights, DECN, by and through Berman, wrongfully and unlawfully precluded, prevented and prohibited the conversion.

66.     For example, in March 2020, LICGO specifically informed Defendants that it was exercising its right to convert its 2011 Convertible Shares.  Rather than acceding to LICGO's rightful request, DECN, by and through Berman, wrongfully proffered misinformation with respect to as to certain prerequisites to effectuate LICGO's conversion and wrongfully rejected the same.

67.     Thereafter, in April 2020, LICGO again sought to exercise its right to convert its 2011 Convertible Shares.  As LICGO had already held the 2011 Convertible Shares for the requisite period of time to permit conversion thereof, DECN's obligations at that time were clear and unambiguous – DECN had no right other than to convert the 2011 Convertible Shares.  DECN, by and through Berman, however, wrongfully denied LICGO its lawful opportunity to convert, stating "uhhhh … not for awhile."

68.     In response to LICGO's prompt challenge to Defendants' wrongful rejection of its right to convert, Defendants wrongful and unlawful response was merely "I cannot allow that to happen."  Significantly, and without equivocation, the LICGO Subscription Agreement does not confer on DECN the discretion to accept or reject LICGO's right for conversion, nor does the Subscription Agreement provide any reservation by which DECN could refuse to convert the Convertible Shares to common stock.

69.     The same unlawful conduct that Defendants inflicted on LICGO's attempted conversion request similarly befell Sovereign and Paradigm.  Berman, on behalf of DECN,

15

summarily ignored and rejected Plaintiffs' conversion rights, childishly responding that "the store is closed" and that Plaintiffs should "go away" or "fuck off."

70.     For example, in March 2020, Paradigm requested that its shares be issued pursuant to the Paradigm Independent Contractor Agreement; DECN and Berman rejected this lawful request, and refused to issue such shares.   Rather, Berman, on behalf of DECN, misrepresented that the issuance would occur, and asked Paradigm to "give me a few days.... I am a little busy this week."  Berman, on behalf of DECN, made similar excuses to the other Plaintiffs, and at no point thereafter did DECN ever issue the requisite shares owed.

71.     Inequitably, during the same time period when DECN and Berman were wrongfully  frustrating and wrongfully refusing to permit Plaintiffs to exercise their conversion rights, DECN, by and through Berman, authorized the conversion of, leading to the sales of, hundreds of millions of DECN shares by other investors.

16

**FIRST COUNT**

**(Breach of Contract)**

72.     Plaintiffs repeat and reallege the previous allegations of the Complaint as if more fully set forth herein.

73.     Pursuant to the various Subscription Agreements, and the Independent Contractor Agreement (collectively, the "Agreements"), defendant DECN was contractually bound to Plaintiffs to, among other things, to convert DECN securities for the benefit of Plaintiffs.

74.     Plaintiffs fulfilled all of its obligations to defendant DECN under the Agreements.

75.     Defendant DECN materially breached its contractual obligations owed Plaintiffs.

76.     As a result of those breaches, Plaintiffs have been damaged.

**SECOND COUNT**

**(Breach of Implied Covenant of
Good Faith and Fair Dealing)**

77.     Plaintiffs repeat and reallege the previous allegations of the Complaint as if more fully set forth herein.

78.     Pursuant to the common law of the State of California, there is inherent in every contract an implied covenant of good faith and fair dealing.

17

79.     The implied covenant of good faith and fair dealing required that defendant DECN not do anything to destroy or injure Plaintiffs' right to receive the benefits of the Agreements.

80.     By its conduct as set forth above, defendant DECN breached the implied covenant of good faith and fair dealing.

81.     As a result of the foregoing, Plaintiffs have been damaged.

**THIRD COUNT**
**(Common Law Fraud)**

82.     Plaintiffs repeat and reallege the previous allegations of the Complaint as if more fully set forth herein.

83.     DECN, by and through Berman, made material misrepresentations and/or omissions concerning its Agreements with Plaintiffs with the intent that Plaintiffs rely upon such representations and/or omissions.

84.     DECN, by and through Berman, made the foregoing material misrepresentations and/or omissions knowing that they were false.

85.     Plaintiffs relied upon the knowingly false representations and/or omissions of DECN and Berman and entered into the Agreements with DECN for the rights of issuance of DECN convertible securities.

86.     As a result of the foregoing, Plaintiffs have been damaged.

18

Complaint on behalf of Plaintiffs LICGO Partners, LLC, Sovereign Partners, LLC Paradigm Capital Holdings, LLC
Case No.

#12113994.1

## FOURTH COUNT

### (Breach of Fiduciary Duty)

87.     Plaintiffs repeat and reallege the previous allegations of the Complaint as if more fully set forth herein.

88.     Berman, as officer, director, employee, principal or agent of the corporate defendant, DECN, owed a fiduciary duty to Plaintiffs.

89.     By reason of the foregoing, Berman breached his fiduciary duties to Plaintiffs and is liable for the damages cause thereby.

90.     Plaintiffs have been substantially damaged as a result of defendant Berman's wrongful conduct.

## FIFTH COUNT

### (Trover and Conversion)

91.     Plaintiffs repeat and reallege the previous allegations of the Complaint as if more fully set forth herein.

92.     Defendants wrongfully obtained, and wrongfully continue to exercise dominion and control over Plaintiffs' assets, namely, Plaintiffs common stock in DECN, in a manner which is inconsistent with Plaintiffs' rights.

93.     By reason of the foregoing, Defendants are liable for the damages caused thereby.

19

## SIXTH COUNT

### (Unjust Enrichment)

94.     Plaintiffs repeat and reallege the previous allegations of the Complaint as if more fully set forth herein.

95.     By reason of the foregoing alleged above, Defendants have been unjustly enriched at Plaintiffs' expense.

## SEVENTH COUNT

### (Conspiracy and Aiding and Abetting)

96.     Plaintiffs repeat and reallege the previous allegations of the Complaint as if more fully set forth herein.

97.     By reason of the foregoing, Defendants joined in a conspiracy, the common purpose and effect of which was to unlawfully obtain the monies and/or assets of Plaintiffs for their own use and benefit, and to conceal the fact of such improper conduct from Plaintiffs and perform other acts in furtherance of the conspiracy.

98.     Each of the Defendants committed acts in furtherance of the conspiracy and aided and abetted the others' unlawful actions.

99.     By reason of the foregoing, Defendants are liable for the damages caused thereby.

## EIGHTH COUNT

### (Piercing the Corporate Veil)

100.     Plaintiffs repeat and reallege the previous allegations of the Complaint as if more fully set forth herein

20

101.    As alleged above, DECN and PharmaTech are merely the "alter egos" of Berman.

102.    As alleged above, DECN and PharmaTech share identical equitable ownership in the two entities.

103.    As alleged above, DECN and PharmaTech's directors and officers of the two entities are one and the same and share in the responsible supervision and management of the two entities.

104.    Upon information and belief, sole ownership of all of the stock in the two entities is controlled by Berman.

105.    As alleged above, DECN and PharmaTech use the same office or business location.

106.    Upon information and belief, DECN and PharmaTech share employment of the same employees.

107.    As alleged above, DECN and PharmaTech, by and through Berman's facilitation and assistance, fail to maintain an arm's length relationships among the two related entities.

108.    As a matter of law, the Court should disregard the corporate formalities of DECN and PharmaTech, and pierce the corporate veils of DECN and PharmaTech, as it would promote injustice and bring about an inequitable result to allow Berman to avoid liability by standing behind corporate formalities which he flagrantly ignored and/or refused to abide by.

Complaint on behalf of Plaintiffs LICGO Partners, LLC, Sovereign Partners, LLC Paradigm Capital Holdings, LLC
Case No.
#12113994.1

## NINTH COUNT

### (Violations of Sections 10(b) of the Securities Exchange Act of 1934, and Rule 10b-5 thereunder)

109. Plaintiffs repeat and reallege the previous allegations of the Complaint as if more fully set forth herein.

110. DECN and Berman, in connection with the purchase and sale of securities, by the use of the means and instrumentalities of interstate commerce and by the use of the mails, directly and indirectly: (a) used and employed devices, schemes and artifices to defraud; (b) made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices and courses of business which operated or would have operated as a fraud and deceit upon sellers and purchasers and prospective purchases of securities.

111. DECN and Berman acted with scienter in that they knowingly or recklessly made the material misrepresentations and omissions and engaged in the fraudulent scheme described above.

112. By reason of the foregoing conduct alleged above, DECN and Berman violated Section 10(b) of the Exchange Act, 15 U.S.C. 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. 240.10b-5.

## TENTH COUNT

### (Violations of California Corp. Code § 25401)

113. Plaintiffs repeat and reallege the previous allegations of the Complaint as if more fully set forth herein.

22

Complaint on behalf of Plaintiffs LICGO Partners, LLC, Sovereign Partners, LLC Paradigm Capital Holdings, LLC Case No.

#12113994.1

114. Under California Corp. Code § 25401, "[i]t is unlawful for any person to offer or sell a security in this state … by means of any written or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading."

115. Under California Corp. Code § 25502, "[e]very person who directly or indirectly controls a person liable under Section 25501, every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions, every employee of a person so liable who materially aids in the act or transaction constituting the violation … are also liable jointly and severally with and to the same extent as such person …"

116. Additionally, under California Corp. Code § 25504.1, any person who material assists in violation of Section 25401, with intent to deceive or defraud, is jointly and severally liable with any other person liable under the chapter for such violation.

117. California Corp. Code § 25501 affords a statutory cause of action to victimized investors for violations of Section 25401.

118. Any person who violates Section 25401 shall be liable to the person who purchases a security from him, who may sue for rescission. Upon rescission, a purchaser may recover the consideration paid for the security, plus interest at the legal rate, less the amount of any income received on the security, upon tender of the security.

119. By reason of the foregoing conduct alleged above, DECN and Berman violated California Corp. Code § 25401.

23

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

a. Temporarily restraining Defendants from disposing of all or part of their assets, pending appointment of a receiver and a completion of an accounting and restitution to Plaintiffs;

b. Enjoining and restraining Defendants temporarily and pending trial, directly or indirectly, from selling, transferring, encumbering, hypothecating, or otherwise alienating or impairing their interests in any real or personal property in which they have any interest, whether said interest be equitable or legal in nature;

c. Preliminarily enjoining Defendants from disposing of Plaintiffs' assets fraudulently obtained by them;

d. Requiring Defendants to make a full accounting, disclosure and return of Plaintiffs' monies;

e. Imposing a constructive trust upon Defendants' assets, pending completion of the accounting and restitution to Plaintiffs;

f. Appointing a custodial receiver of all Defendants' assets, pending completion of the accounting and restitution to Plaintiffs;

g. Piercing the corporate veil of DECN and PharmaTech to hold Berman responsible for any and all conduct alleged against each entity;

h. Compensatory and/or consequential damages;

i. Punitive damages;

24

1    j.  Rescission;

2    k.  Restitution;

3    l.  Costs of suit and attorneys' fees;

4    m.  Costs of investigation; and

5    n.  Granting such further equitable relief as the Court may deem appropriate.

6                                    **JURY DEMAND**

7    Plaintiffs hereby demand a trial by jury on all issues of the Complaint so triable.

8

9

10   Dated:  March,  2021                    WILENTZ, GOLDMAN & SPITZER, P.A.

11

12                                           By: /s/_____
                                                  KEVIN P. RODDY (SBN 128283)
13

14                                           **WILENTZ, GOLDMAN & SPITZER, P.A.**
                                             90 Woodbridge Center Drive
15                                           Post Office Box 10
                                             Woodbridge, NJ 07095
16                                           Telephone: (732) 636-8000
                                             Facsimile: (732) 726-6686
17                                           kroddy@wilentz.com
                                             Attorneys for Plaintiffs
18

19

20

21

22

23

24

25

26                                           25

27
     Complaint on behalf of Plaintiffs LICGO Partners, LLC, Sovereign Partners, LLC Paradigm Capital Holdings, LLC
28                                                                                                    Case No.
     #12113994.1